**Raymond W. SAFFRHAN, Plaintiff,**

v.

**BUCK STEBER, INC. et al., Defendants.**

**Civ. A. No. 75–2464.**

United States District Court,
E. D. Louisiana.

May 30, 1977.

David E. Caruso, Jr., New Orleans, La., for Raymond W. Saffrhan.

Francis Emmett, R. A. Redwine, New Orleans, La., for Murphy Pacific Marine Salvage Co.

Joel L. Borello, New Orleans, La., Nathan Greenberg, Gretna, La., for Buck Steber, Inc.

John R. Schupp, New Orleans, La., Thomas L. Jones, Dept. of Justice, Admiralty & Shipping Section, Washington, D. C., for United States.

ALVIN B. RUBIN, District Judge:

The plaintiff, a diver tender, was injured while employed by a private corporation which, under contract with the United States, was engaged in clearing sunken vessels from the Suez Canal after the events of the 1973 Mid-East War. Contending that he was a Jones Act employee of the private corporation, he asked for a jury trial. He also sued the United States as a co-defendant for maritime negligence. Both the United States and the private corporation, Buck Steber, Inc. ("Buck Steber") have moved to strike the demand for jury trial.

## I. MOTION BY UNITED STATES

■ The plaintiff concedes that he has no right to a jury trial against the United States because suit is brought against the sovereign, which has consented to be sued in matters of this kind by the Suits in Admiralty Act of 1920, 46 U.S.C. §§ 741–752, and that statute does not grant claimants the right to a jury trial. The plaintiff urges, however, that the court use the jury as an advisory one. The case is complicated factually; to explain to a jury its ramifications with respect to the United States would require more trial time and a lengthy additional jury charge. The court can hear the evidence and decide this aspect of the case more expeditiously. The motion to strike the demand for jury trial as to the United States is GRANTED.

## II. MOTION BY BUCK STEBER

### A.

As to Buck Steber, the issues are more complicated. It becomes necessary first to review the facts more fully:

The United States agreed to assist Egypt in clearing the Suez Canal. United States military and other personnel furnished part of this assistance, undertaking the removal of mines and other explosive ordnance from the Canal. It was necessary also to remove wrecks from the Canal; the United States, through the Department of the Navy, contracted for the removal of ten wrecks with Murphy Pacific Marine Salvage Co. ("Murphy"). However, the United States agreed to provide two vessels known as Yard Heavy Lift Craft (YHLC's), the Crandall and Crilley, for Murphy's use. These heavy lift craft were manned and operated by Murphy personnel. They were towed from the Phillipine Islands to the Suez Canal by tugs arranged for by Murphy.

The Government of Egypt, through its Suez Canal authority, was to provide logistical support to this effort where possible. Its services were to include dredging operations and providing barges and other small craft, with crews, for use as needed.

Murphy entered into a subcontract with Buck Steber for diving services to be performed in connection with removal of the wrecks. Steber employees were to perform the duties of divers and diver tenders. The plaintiff was engaged in the United States to work as a diver tender, and arrived in Suez on September 1, 1974. He contends he was assigned to the Crandall and became a member of its crew.

The United States assigned a small contingent of personnel, military and civilian, to monitor the contract between it and Murphy, and to provide liaison with the Egyptians where necessary. Captain John H. Boyd, Jr., United States Navy, was the officer in charge of these personnel.

The necessary dredging, performed by the Egyptian government, included removal of the so called Devesoir causeway, built for military operations by the Israeli forces; this separated the Canal from the Great Bitter Lake where the wrecks in the Canal were to be dumped after being lifted from the Canal.

On September 9, 1974, the first of the wrecks, the Tug Mongued, had been lifted between the Crandall and Crilley and was

to be removed to the dumping area. All three vessels, with the wreck suspended between the Crandall and the Crilley, had been towed to a position approximately two miles north of the causeway. Egyptian government personnel had provided soundings showing that the causeway area had been dredged to a depth sufficient for the wreck to pass above it, but United States government personnel were not satisfied that soundings were correct, and, therefore, decided that pneumo soundings should be taken in this area by divers to insure that the wreck could pass.

Captain Boyd was aware that these soundings were to be taken. Because the Egyptian personnel had previously been embarrassed by making soundings that proved to be erroneous, Captain Boyd feared that the diving team would encounter difficulty in obtaining a sounding boat for use in checking the soundings on this occasion. Accordingly, since it was his job to perform liaison with the Egyptian government personnel when there was a question of their providing logistical support, he drove to the causeway from his office in Ismailia where the dredge was located.

Upon his arrival, he found the Egyptian dredge master protesting that the boat ordinarily used for sounding operations was needed for another job. Because the hour was late, and it was necessary to make the dive to confirm or repudiate the earlier soundings during daylight hours, Captain Boyd asked permission to use another Egyptian boat, which was attached to the dredge. The dredge master informed him that the anchor winch on this boat was inoperative. Nevertheless, Captain Boyd decided to use this boat.

Captain Boyd went aboard the boat with a subordinate, Commander Coleman, and the diving crew. The boat was manned by an Egyptian crew which consisted of a coxswain, an engineer and a deckhand. An Egyptian engineer accompanied the group. The boat was navigated to the diving site and anchored, but its position did not permit the diver to make a 360° sweep of the area. Accordingly, someone, perhaps Captain Boyd, decided that the anchor should be raised and the boat repositioned. Two men were attempting to raise the anchor by hand, but were having difficulty, so Captain Boyd called on all aboard, including the plaintiff, to help. The plaintiff was injured while doing so.

The plaintiff contends that, when injured, he was either a member of the crew of the Crandall or a member of the crew of the Egyptian vessel.

### B.

It is evident that the plaintiff could not have been a member of the crew of the Egyptian vessel. He had no more or less permanent connection with that vessel. *Offshore Company v. Robison*, 5 Cir. 1959, 266 F.2d 769. Hence, his Jones Act claim must be predicated on the thesis that, as a member of the crew of the Crandall, he was assigned to duties elsewhere, and that he has a claim for negligence of his employer whatever may have been the situs of his injury. *Vincent v. Harvey Well Service*, 5 Cir. 1971, 441 F.2d 146.[1]

Murphy has been dismissed from this suit because the court has no jurisdiction over it. The only other claims the plaintiff could assert here, therefore, are: (1) Against the United States, for negligence under the Jones Act, on the basis that the plaintiff was a member of the crew of its vessel, the Crandall; (2) Against the United States, for negligence, because the plaintiff was not a member of the crew of its vessel, hence is not barred by the rule of The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760;[2] (3) Against the United States for the unsea-

---

1. In *Vincent*, the court held that a seaman may recover for injuries incurred on land (in that case while commuting to the drilling rig) as sustained "in the course of his employment."

2. "That all the members of the crew, except perhaps the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure."

worthiness of the Egyptian vessel; (4) Against Buck Steber, as his employer, under the Jones Act.

The claims against the United States need not be further discussed. Whether or not disposed of by Motion for Summary Judgment, their validity is not here at issue for, as to the United States, the current motion deals only with the question of jury trial.

The plaintiff was clearly an employee of Buck Steber. He could not claim that Buck Steber owed him a warranty of seaworthiness of any vessel for it neither owned nor operated either the Crandall or the Egyptian vessel. If he was a member of the crew of the Crandall, even though his employer was not the Crandall's owner, he would have the status to make a Jones Act claim against his employer, Buck Steber. If he was not a member of the Crandall's crew, or the crew of any other vessel, then he conceivably might assert a diversity tort claim against his employer unless he was covered by a compensation act that barred such a claim.

### C.

This lengthy prologue brings us to the legal issue: Is the plaintiff entitled to a jury trial of the Jones Act claim? The answer to that would normally be clear: he is because the Jones Act says so. 46 U.S.C. § 688. But, as has already been stated, the Suits in Admiralty Act does not provide for jury trial. Buck Steber contends that the Suits in Admiralty Act so embraces the claim against it as to eliminate the plaintiff's right to a jury trial.

The Suits in Admiralty Act, 46 U.S.C. § 745, provides for suits against the United States, and it makes this remedy exclusive, in the following terms:

> Provided, That where a remedy is provided by this Act it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States . . . whose act or omission gave rise to the claim . . . . .

Buck Steber contends that the Suits in Admiralty Act did provide a remedy for the plaintiff's injury, that it was itself an agent or employee of the United States at the time; hence the plaintiff's exclusive remedy was under the Act with respect both to claims against the United States and against Buck Steber. To determine whether, if the plaintiff was a member of the Crandall's crew, and was injured as a result of Buck Steber's negligence (as distinguished from the negligence of United States personnel) his claim would be one for which "a remedy is provided" by the Act, it is necessary to turn to its other provisions.

The basic cause of action created by the statute is set forth in 46 U.S.C. § 742, as follows:

> In cases where if [a vessel owned by the United States] were privately owned or operated . . . a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States . . . provided that such vessel is operated as a merchant vessel or as a tugboat.

The Suits in Admiralty Act is thus limited to suits arising out of the operation of a merchant vessel. In 1925, Congress enacted the Public Vessels Act, however, permitting suit against the United States for damages caused by a public vessel. 46 U.S.C.A. §§ 781–790. The procedure in suits under the Public Vessels Act is governed by the provisions of the Suits in Admiralty Act. 46 U.S.C. § 782.

■ Neither statute would in terms permit a claim against the United States for the negligence of a contractor operating a vessel owned by the United States, whether merchant or, in this instance, public, as the Crandall was. A vessel owner may contract with others for services aboard its vessel; if it does, the employees of the contractor are its Jones Act employees, not Jones Act employees of the owner. *Mahramas v. American Export Isbrandtsen Lines, Inc.,* 2d Cir. 1973, 475 F.2d 165. But see, *Spinks v. Chevron Oil Co.,* 5th Cir. 1975, 507 F.2d 216.

However, when a public vessel is operated by a private corporation under contract with the United States, the private operator becomes the agent of the United States. Petition of United States, 3d Cir. 1966, 367 F.2d 505. If Buck Steber had been engaged, as was the contractor in *Petition of United States*, supra, to "man, victual and navigate" the Crandall, then Buck Steber would have been the agent of the United States, and, by the same precedent, the remedy supplied by the Public Vessels and Suits in Admiralty Acts would have been exclusive. But here Buck Steber was merely to perform a service aboard that vessel. Therefore, we must consider whether the Public Vessels Act provided a remedy against the United States for Buck Steber's negligence. There appears to be no controlling jurisprudence on this subject, and the language of the statutes yields no clear meaning. So we turn to history.

The Suits in Admiralty Act was adopted after the Supreme Court held that, although the United States, as sovereign, was immune to suit, its vessels could be seized for a maritime lien arising out of an in rem proceeding against a United States vessel. *The Florence H.*, D.C., 248 F. 1012. See S.Rep.No.223, 66th Congress., 1st Sess; H.Rep.No.497, 66th Congress., 2d Sess. The Act permits suit in personam against the United States and thereby relieves the government of the possibility of obstruction of its commercial maritime affairs by liens.

In 1949, Congress made the remedy granted against the government exclusive. 46 U.S.C. § 745. See the legislative history set forth in *Petition of United States*, supra, 367 F.2d at 510. After reviewing this and the jurisprudence, the court concluded, in that case:

Thus, it is reasonable to infer from the quoted language of the legislative analysis that Congress intended to restore the Johnson decision in its entirety and in so doing to make governmental liability exclusive throughout a broad spectrum of contractual arrangements, for the operation of public vessels, including the type presented by the Mathiasen contract.

For these reasons we have concluded that, by force of the exclusive liability clause of section 745, *any right to recovery against the United States here for injury caused by its public vessel precludes recovery for the same injury against the contract operator whose conduct was the immediate cause of the accident.* (Emphasis supplied)

367 F.2d at 511. The court continued:

The United States is suable here because Congress has waived sovereign immunity from liability for damage 'caused by a public vessel of the United States'. 46 U.S.C. § 781. Accordingly, wherever the faults of a public vessel or its operation are such as would make a private owner liable, personal liability for harm thus caused may be imposed upon the United States. Moreover, as we have already pointed out, if a remedy exists against the United States, section 745 makes that remedy exclusive of any recovery against an agent of the United States whose conduct gave rise to the claim.

*Id.*

The court did not, however, end its opinion there. For it then turned to consider whether the injured seaman who had a claim against the United States also had a Jones Act remedy against his private employer (Mathiasen). In this connection, it said:

Difficulty arises because Jones Act recovery is normally allowed only against the complaining seaman's employer, and in this case Mathiasen hired the crewmen and exercised immediate control over them pursuant to a contract with the United States which specified that the members of the crew would be employees of Mathiasen and not of the United States. . . .

However, the determination of the proper Jones Act defendant in public vessel cases is affected by the exclusive liability provision of section 745. In that section Congress attempted to resolve uncertainties and confusion whether the United States or its contractual instru-

mentality could be sued, as reflected in a series of maritime cases, several of them Jones Act cases from *Johnson v. United States Shipping Board Fleet Corp.*, 1930, 280 U.S. 320, 50 S.Ct. 118 [, 74 L.Ed. 451] to *Cosmopolitan Shipping Co. v. McAllister*, 1949, 337 U.S. 783, 69 S.Ct. 1317 [, 93 L.Ed. 1692]. This was accomplished if section 745 is construed as designating the United States rather than its agent as the entity suable on all claims for harm done by a public vessel as a result of the agent's conduct. Cf. *Richmond Screw Anchor Co. v. United States*, 1928, 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303 (construing and applying a similar provision concerning patent infringement by government contractors). The logical implication of this statutory designation of the party to be held responsible *is to impose liability on the United States in Jones Act cases whether it or its operating agent is conceptually the seaman's employer.* Cf. *North Carolina R. R. Co. v. Zachary*, 1914, 232 U.S. 248, 34 S.Ct. 305, 58 L.Ed. 591. Indeed, any other construction would perpetuate the very uncertainty as to whom a seaman should sue for injury caused by a public vessel which Congress has sought to eliminate. *Id.* at 512. (Emphasis supplied)

This construction would appear to make the result reached by the majority in *Mahramas v. American Export Isbrandtsen Lines, Inc.*, 2d Cir. 1973, 475 F.2d 165,[3] inapplicable to claims arising out of an injury caused either by a public vessel, in the literal words of the Public Vessels Act, or caused by an employment relationship aboard a public vessel.

Another course brings us to the same destination. Even if Buck Steber was not the operating agent of the United States, Murphy was. Murphy could not, by subcontracting part of its responsibilities, alter the rights and obligations either of the United States or of employees enjoying a Jones Act status on a public vessel.

In either event, the points much labored by counsel, whether Murphy was an independent contractor and whether Buck Steber, in turn, was an independent contractor, are insignificant, *Smith v. United States*, 4 Cir. 1965, 346 F.2d 449 at 453; compare *Briggs v. United States*, D.C.1974, 1974 AMC 1980. See also *Cosmopolitan Shipping Co. v. McAllister*, 1949, 337 U.S. 783, 795, 69 S.Ct. 1317, 93 L.Ed. 1692. So also is the issue of their respective agreements to hold the United States or each other harmless. Assuming that both were independent contractors and that both had agreed to hold the United States harmless, the statutory rights of the plaintiff against Buck Steber are not altered by these contracts.

This takes us beyond the simple question, whether the plaintiff has a right to a jury trial against Buck Steber. Since he can have no Jones Act claim against Buck Steber, he is not entitled to a jury trial. But, moreover, it returns us to the earlier motion by Steber for a summary judgment dismissing the plaintiff's claims against it. This court denied that motion in part because the facts and the legal principles were not then clear. The facts have finally emerged from the murky waters of the Canal, and the court has independently reviewed the jurisprudence. On this basis, it appears that it should now grant that motion for summary judgment. Lest, however, some additional wreck should lurk beneath the waters, counsel will be furnished this opinion, and the Buck Steber motion for summary judgment is assigned for further argument at 9:00 a. m. on the 15th day of June, 1977. Counsel shall submit memoranda in accordance with the local rules prior thereto.

To avoid misapprehension, the court states its view, in part previously expressed: The plaintiff has a Jones Act claim and, in the alternative, a maritime tort claim against the United States. The Jones Act claim will turn in part on whether the plaintiff was a member of the crew

---

3. In *Mahramas*, the court held that an employee of an independent contractor, working aboard a ship, could not maintain a Jones Act claim against the shipowner, but only against her immediate employer, the independent contractor.

of the Crandall; if so, it would not matter who was his immediate employer. If the plaintiff was not a crew member, then his maritime tort claim would depend on whether he can show negligence. *Smith v. United States*, 4 Cir. 1965, 346 F.2d 449, 453. Again, it will not matter for the purpose of the plaintiff's claim whether the negligence was that of the United States or Buck Steber or Murphy (even though Murphy is not party to this suit).