Samanie, Barnes & Allen, Michael J. Samanie, David B. Allen, Trial Atty., Houma, La., for plaintiff.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Edward J. Koehl, Jr., Jefferson R. Tillery, New Orleans, La., for Pan American World Services, Inc.

Reneé Clark McGinty, Asst. U.S. Atty., New Orleans, La., John E. Wells, IV, Trial Atty., Stephanie J. Grogan, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

McGlinchey, Stafford, Mintz, Cellini & Lang, Lance S. Ostendorf, New Orleans, La., for Computer Sciences Corp.

**Robert S. BOWMAN, Jr.**

v.

**PAN AMERICAN WORLD SERVICES, INC., et al.**

**Civ. A. No. 87–5982.**

United States District Court,
E.D. Louisiana.

Feb. 8, 1989.

### ORDER & REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter originally came on for hearing November 9, 1988, on separate motions for summary judgment filed by defendant Pan American World Services ["Pan Am"] to dismiss plaintiff's claims against it under the Suits in Admiralty Act, 46 U.S.C. App. § 741, et seq. ["SAA"] and the Public Vessels Act, 46 U.S.C.App. § 781, et seq. ["PVA"]; and to dismiss plaintiff's claims under the Jones Act, 46 U.S.C.App. § 688. Defendant Computer Sciences Corporation ["CSC"] also filed a motion for summary judgment to dismiss plaintiff's claim against it under the SAA and the PVA, which was set for hearing January 4, 1989. CSC's motion was unopposed. At the hearing, the Court denied all motions, but indicated that the parties would be allowed to file supplemental memoranda on the issue of the applicability of the SAA and the PVA for the Court's consideration. By

Minute Entry dated January 3, 1989, the Court took these motions under submission and without oral argument. After considering the memoranda submitted by the parties as well as other applicable law, the Court rules as follows.

### The Facts

Plaintiff Robert Bowman was a cryogenics technician employed by defendant Pan Am at the time of the incident involved herein. Pan Am had a subcontract from CSC to perform work with respect to cryogenics equipment at the John C. Stennis Space Center, formerly the National Space Technologies Laboratory facility, located near Bay St. Louis, Mississippi. The facility was used at the time of the incident herein for the testing of rocket engines in conjunction with NASA's Space Shuttle Program. Engine testing sites are located throughout the ten mile square complex, and to provide fuel for the engines, a system of man-made canals was constructed through which cryogenics barges carrying rocket fuel could reach any particular testing site as required. Previous to the time of the incident involved herein, NASA contracted with CSC to provide technical support services for the testing program. The CSC subcontract with Pan Am provided for the latter to perform certain of CSC's obligations under the contract with NASA, including the Range and Testing Services, which involved the operation and maintenance of land and barge based cryogenic rocket fuel systems. Plaintiff alleges that on April 29, 1986, he slipped and fell while attempting to step from a cryogenics barge onto a ramp leading to shore. Plaintiff has brought suit against Pan Am, CSC and the United States under the Jones Act for negligence and the unseaworthiness of the barge on which he was allegedly injured.

### The Law

Pan Am and CSC each assert that plaintiff's exclusive remedy is under the SAA and/or the PVA. The SAA provides that in the case of an injury to persons or property caused by a vessel owned or operated by or for the United States, any appropriate nonjury proceeding in personam may be brought against the United States.[1]

Thus, the SAA authorizes suit against the United States under the following three situations: first, where an injury is caused by a vessel owned by the United States; and second, where an injury is caused by a vessel operated by the United States; and finally, in cases where an injury is caused by a vessel operated for the United States. The language of the statute is disjunctive; therefore the fulfillment of any one of the above three conditions will satisfy the requirements of the Act. Furthermore, the SAA provides that if there is a remedy under the Act, such remedy is exclusive of any action against the agent or employee of the United States whose act or omission gave rise to the claim.[2]

It is undisputed that the barge involved was owned by the United States at the time of the alleged injury.[3] It is also undisputed that plaintiff's alleged injury occurred aboard this barge.[4] Therefore, since the case involves a plaintiff who was allegedly injured on a vessel owned by the United

---

1. 46 U.S.C.App. § 741 of the Suits in Admiralty Act provides in pertinent part: "No vessel owned by the United States ... or operated by or for the United States ... shall, in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process in the United States[.]"

   46 U.S.C.App. § 742 provides in pertinent part: "In cases where if such vessel were privately owned or operated, ... a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States[.]"

2. 46 U.S.C.App. § 745 provides in pertinent part: "That where a remedy is provided by this chap-ter it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States ... whose act or omission gave rise to the claim."

3. See the United States' response to request for admissions, attached as Exhibit 2 to defendant Pan Am's original Motion for Summary Judgment and attached as Exhibit 1 to Pan Am's Supplemental Memorandum in Support.

4. See plaintiff's statement of Uncontested Material Facts attached to its Opposition to Pan Am's original Motion for Summary Judgment.

States, his exclusive remedy is against the United States if CSC and Pan Am are considered agents or employees of the United States under Section 745 of the SAA.[5]

Regarding the status of CSC as an employee or agent of the United States under the SAA, the undisputed evidence shows that at all pertinent times, CSC's duties as a contractor for the United States were as follows:

> [CSC] shall, on the terms and conditions hereinafter set forth, furnish the necessary management, labor, facilities, equipment, materials and services, and do all things necessary and incidental to provide and perform Technical Support Services at the National Space Technology Laboratories in support of NASA and other resident users at the NSTL. The services to be provided are more specifically defined in Exhibit "A", "Statement of Work", which is attached hereto and made a part of this Contract.[6]

As part of its services under the contract with the United States, CSC was required to operate the cryogenics/gas facilities/systems in support of rocket testing and other programs at the NSTL.[7] Additionally, the contract made CSC responsible for the operation, maintenance, servicing and repair of all property assigned for use by the United States through NASA.[8] The government-owned barges used for the storage and transportation of cryogenic rocket fuel are clearly an integral part of the cryogenics systems which CSC operat-

ed under contract for the United States. Therefore, the Court finds CSC to be an agent of the United States so as to trigger the applicability of Section 745 of the SAA, rendering plaintiff's exclusive remedy as to CSC to be a suit against the United States pursuant to the provisions of that Act.[9]

Turning to the status of Pan Am as an agent or employee of the United States under Section 745 of the SAA, the undisputed evidence shows that Pan Am contracted with CSC to perform part of the latter's work; i.e., range and testing services at the Stennis Space Center; and specifically contracted to operate the nine cryogenics barges for NASA's rocket engine testing program. Thus, since Pan Am was performing a part of CSC's obligations as an agent of the United States, its involvement was likewise as an agent of the United States.[10] In a case involving identical pertinent facts, suit against a subcontractor to a primary contractor to the United States was dismissed on summary judgment, the Court holding that plaintiff's exclusive remedy was against the United States under the SAA. *See Saffrhan v. Buck Steber, Inc.,* 433 F.Supp. 129 (E.D. La.1977).

The *Saffrhan* Court based its decision on two premises. In the first, the Court found that the legislative history of the SAA and the enactment of Section 745 of the Act demonstrated an attempt by Congress to resolve the uncertainty whether the United States or its contractual instru-

---

**5.** The Court need not consider the applicability of the Public Vessels Act, 46 U.S.C.App. § 781 *et seq.* because since the barge on which plaintiff alleges he was injured was owned by the United States, it is not necessary to decide whether or not it was a public vessel to establish that plaintiff's exclusive remedy is against the United States.

**6.** See Exhibit 1 to CSC's Supplemental Memorandum in Support of Motion for Summary Judgment (hereinafter CSC–1).

**7.** See CSC–1, Exhibit "A" at p. 5.

**8.** See CSC–1, Exhibit "A" at p. 2.

**9.** See Pan Am's Statement of Uncontested Material Facts attached to Pan Am's original Motion

for Summary Judgment, and plaintiff's statement of Uncontested Material Facts, attached to its opposition to Pan Am's original Motion for Summary Judgment.

**10.** See *Doyle v. Bethlehem Steel Corporation,* 504 F.2d 911 (5th Cir.1974) where the defendant, Mathiasen, was engaged to manage and conduct the business of the United States with respect to the operation of certain Navy tankers. The Fifth Circuit affirmed the district court's grant of summary judgment dismissing the claims against Mathiasen on the grounds that plaintiff's exclusive remedy under Section 745 of the SAA was against the United States. In finding Mathiasen to be an agent under Section 745, the court looked to the following two factors: first, that the vessel involved was owned by the United States; and second, that such vessel was being operated for the United States. *Id.* at 914.

mentality could be sued under the Jones Act.[11] The Court found the effect of Section 745 of the United States as the entity subject to suit for injury caused by a public vessel as a result of an agent's conduct was to impose liability on the United States in Jones Act cases whether it or its operating agent is conceptually the seaman's employer.[12]

The second premise on which the *Saffrhan* Court based its decision was that even if the subcontractor was not the operating agent of the United States, the primary contractor was. Therefore, the primary contractor could not, by subcontracting part of its responsibilities, alter the rights and obligations either of the United States or of employees enjoying a Jones Act status on a public vessel. The Court thus found insignificant the question whether the contractor, and in turn, the subcontractor, enjoyed independent contractor status.[13] Similarly, this Court finds nondispositive the degree of the Government's control over the operations in question in determining agent status under Section 745 of the SAA.

Furthermore, even if control is a factor, the Court nonetheless finds Pan Am was an agent of the United States. Although the United States did not exercise day-to-day operational control over Pan Am's activities, Pan Am conducted the business of the United States pursuant to contract with CSC, and the United States retained ultimate control over the vessels and operations involved.[14]

The Court rejects plaintiff's contention that operational control is crucial to determination of agent status under Section 745. In support of this contention, plaintiff cited *Trautman v. Buck Steber, Inc.*, 693 F.2d 440 (5th Cir.1982). However, this case is not applicable to the case at bar. *Trautman* arose in a similar contractual context, with the United States, a primary contractor and a subcontractor, but the focal issue was completely different. The question in *Trautman* was whether the plaintiff employee of the subcontractor had a remedy against the United States under Section 741 of the SAA. Since the United States did not own the vessel involved, the issue was whether under Section 741 the vessel was "operated by or for the United States." The Court in that case never addressed the issue of agency under Section 745 of the Act.[15]

Accordingly, the motion of summary judgment by Pan Am requesting dismissal of plaintiff's claims against it is GRANTED for the foregoing reasons and the motion of CSC requesting summary judgment is likewise GRANTED, both because it is unopposed and for the foregoing reasons.

---

**11.** *Id.* at 133–4.

**12.** *Id.* at 134.

**13.** *Id.* at 134.

**14.** See CSC–1, Exhibit "A" at p. 6; Exhibits 2 and 3 attached to Pan Am's Supplemental Memorandum in Support of its Motion for Summary Judgment.

**15.** Part IV of *Trautman* addressed the issue of the United States' liability under principles of respondiat superior. *Id.* at 445.